UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA TYLER,

                Plaintiff,        Civil Action No. 13-13237
                                    Honorable Bernard A. Friedman
                                    Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 13]**

Plaintiff Linda Tyler ("Tyler") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 13] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Tyler is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [13] be GRANTED, Tyler's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On February 15, 2011, Tyler filed applications for DIB and SSI, alleging a disability onset date of May 31, 2009. (Tr. 134-47). These applications were denied initially on May 25, 2011. (Tr. 73-80). Tyler filed a timely request for an administrative hearing, which was held on February 29, 2012, before ALJ Regina Sobrino. (Tr. 24-49). Tyler, who was represented by attorney Andrew Ferguson, testified at the hearing, as did vocational expert Stephanie Lorey. (*Id.*). On April 24, 2012, the ALJ issued a written decision finding that Tyler is not disabled. (Tr. 12-20). On June 29, 2013, the Appeals Council denied review. (Tr. 1-4). Tyler filed for judicial review of the final decision on July 29, 2013. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

>regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.    Background**

*1.    Plaintiff's Reports and Testimony*

At the time of the administrative hearing, Tyler was 42 years old. (Tr. 28). She was 5'4" tall and weighed 235 pounds. (Tr. 38). She testified that she lived in an apartment with her adult son. (*Id.*). She completed high school but did not obtain a college degree. (Tr. 28-29). Tyler previously worked as a car wash attendant and a direct care worker; however, she stopped working in 2008 because of osteoarthritis in her legs and knees, carpal tunnel syndrome, and back pain. (Tr. 29, 38, 165).

Tyler testified that she sees a psychiatrist for depression and bipolar disorder. (Tr. 36). Tyler reported taking several medications, which make her drowsy "all day." (Tr. 33, 39, 167). She indicated that her conditions impede her ability to lift, squat, bend, stand, walk, kneel, climb stairs, complete tasks, concentrate, and get along with others. (Tr. 183). However, she is able to finish what she starts, follows written instructions well, and has no difficulty getting along with

authority figures. (Tr. 183-84). She testified that three or four days a week, she stays in bed all day. (Tr. 34). She further indicated that her rotator cuffs are "messed up," and said that she has received cortisone shots in both shoulders. (Tr. 31-32). At the hearing, she testified that her osteoarthritis is so bad that her physician told her she must have both knees replaced within the next two years.[1] (Tr. 32). In addition, Tyler testified that she is epileptic and last had a seizure in 2010. (Tr. 33).

In an April 7, 2011 function report, Tyler indicated that she is able to prepare complete meals, perform indoor chores, drive, and go shopping. (Tr. 180-81). She reported having no problems with personal care, but said that she does have difficulty sleeping because her arms and legs are "always hurting." (Tr. 179). She reported being able to pay bills, count change, and handle a checking and savings account, and said she spends time with others "every day." (Tr. 181-82). At the February 29, 2012 administrative hearing, however, Tyler testified that she does not cook, clean, do laundry or yard work, or shop for groceries; rather, she said that her parents, son, or other relatives assist her with these tasks. (Tr. 34-35). She further testified that she never visits relatives or friends and has no hobbies. (Tr. 34).

Tyler also testified at the hearing that she can stand for ten or fifteen minutes and walk for only five minutes at a time. (Tr. 29). She testified that she has been using a cane (which she claims was prescribed by her primary care physician) every day for one or two months.[2] (Tr. 29-30). Tyler further testified that she can sit for only fifteen to twenty minutes before she needs to lie down and elevate her legs. (Tr. 30, 40). She cannot lift even a gallon of milk. (Tr. 30-31). Tyler further testified that she has been wearing braces on her hands for her carpal tunnel

---

[1] Notably, however, there is no mention of potential knee replacement surgery in Tyler's medical records.

[2] There is no indication in Tyler's medical records that a cane was ever prescribed.

4

syndrome for approximately two years,[3] and she sometimes drops objects because she has difficulty using her hands. (Tr. 31).

### 2. Medical Evidence

The Court has thoroughly reviewed Tyler's medical record. In lieu of summarizing Tyler's medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Tyler is not disabled under the Act. At Step One, the ALJ found that Tyler has not engaged in substantial gainful activity since May 31, 2009, her alleged onset date. (Tr. 14). At Step Two, the ALJ found that Tyler has the following severe impairments: degenerative joint disease, obesity, carpal tunnel syndrome, epilepsy, and depression. (*Id.*). At Step Three, the ALJ found that her impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 15-16).

The ALJ then assessed Tyler's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: no climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; frequent handling, fingering, feeling, and reaching, with no reaching above shoulder level required; no exposure to hazards or vibration; no driving as a work duty; and simple, routine, low stress work (defined as no fast-paced work, no work that involves quotas, and no assembly line work). (Tr. 16-18).

At Step Four, the ALJ determined that Tyler is unable to perform her past relevant work. (Tr. 18). At Step Five, the ALJ concluded, based in part on vocational expert ("VE") testimony,

---

[3] Again, while Tyler claims these braces were prescribed by physicians, (Tr. 31), the Court finds no evidence of this in her medical records.

that Tyler is capable of performing the light jobs of sorter (4,800 jobs in the lower peninsula of Michigan), cashier (21,500 jobs), and housekeeper (5,000 jobs). (Tr. 19-20). As a result, the ALJ concluded that Tyler is not disabled under the Act. (Tr. 20).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E.   Analysis**

*1.   Waiver*

It is difficult to discern Tyler's specific arguments in support of her motion for summary judgment. Her motion consists almost entirely of a compilation of quotations of black letter case law, with little accompanying analysis or application of that law to the facts of her case. Tyler does assert (in a heading in her brief) that the ALJ erred in "assessing [her] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [her] impairments." (Doc. #9 at 6). But, Tyler does not explain with any particularity whatsoever which medical records the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*). Though she appears to argue that the ALJ violated the treating physician rule, she does not cite to any treating physician opinion, much less provide a fact-based explanation of how the ALJ purportedly erred in analyzing her treating physician

7

records.

In response to Tyler's motion, the Commissioner argues that Tyler has waived any challenge to the ALJ's assessment of the medical opinion evidence because she has not made any substantive claims of error regarding those aspects of the ALJ's decision.[4]  (Doc. #13 at 9). Indeed, Tyler's brief is very similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue.  And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Tyler's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel.  In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case.  Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted).  While Tyler's opening brief in the instant case was filed prior to issuance of the *Fielder* opinion, the Court notes that it is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*.  Here, then, the Court could find that

---

[4] Tyler provides the Court with nearly three pages of black letter law regarding the treating physician rule, but does not actually argue that the rule was violated here. (Doc. #9 at 12-14). Her failure to even make – let alone fully develop – an argument regarding application of the treating physician rule constitutes a waiver of any argument she might otherwise have had on this issue.  *See Terrell v. Comm'r of Soc. Sec.*, 2013 WL 5178541, at *9 (E.D. Mich. Sept. 10, 2013) ("[P]laintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim.").

Tyler has waived her argument regarding the ALJ's assessment of the medical opinion evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will consider this evidence in light of the arguments raised (albeit vaguely) by Tyler.

        2.      *Credibility*

Tyler challenges the ALJ's credibility determination, asserting that her conclusion that she was not entirely credible was "clearly in error" because "her testimony regarding her severe medical impairments is backed up by medical documentation." (Doc. #9 at 11). In making this assertion, Tyler ignores the reasons articulated by the ALJ for discounting her credibility and fails to cite any medical evidence the ALJ actually failed to properly consider. As set forth more fully below, the ALJ reasonably discounted Tyler's allegations of disabling limitations because they were inconsistent with the objective medical evidence, the opinions of the state agency reviewing psychiatrist, and her daily activities. (Tr. 16-18).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ

finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, the ALJ thoroughly discussed the objective medical evidence. As the ALJ noted, Tyler presented to Hurley Medical Center on June 1, 2009, claiming that she had had a seizure. (Tr. 285-315). It was noted that Tyler had been "noncompliant with her medications" for quite some time.[5] (Tr. 285). She had a normal EEG (Tr. 313-15), normal chest x-rays (Tr. 311), and a negative CT scan (Tr. 309). Later that month, Tyler sought treatment for a syncope episode, and test results again showed that she had a negative CT scan (other than right eye swelling) and normal chest x-rays. (Tr. 277-80, 283-84). Cervical spine x-rays performed at this time showed only mild anterior degenerative spurring at the C5-C6 interspace, with straightening of normal cervical lordosis; and no acute fracture, dislocation, or focal destructive process. (Tr. 281-82). In May 2011, Tyler claimed she had had a seizure three months earlier; however, she had not visited a hospital for treatment and she refused to treat with a neurologist. (Tr. 368-69). In contrast, medical documentation from January and March 2011 indicate that her seizures were controlled (Tr. 370-72), and she testified at the hearing that she had not had a seizure since 2010 (Tr. 33). The ALJ also noted that Tyler still drives, and there is no indication of any restrictions

---

[5] Later test results showed that Tyler had a subtherapeutic level of seizure medication in her system. (Tr. 261). "The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible." *Battice v. Comm'r of Soc. Sec.*, 2014 WL 1366489, at *9 (W.D. Mich. Mar. 31, 2014) (citing *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)).

on her driver's license due to seizures. (Tr. 17 (citing Tr. 35)).

Tyler also complained of knee pain, and September 2010 x-rays show that she had mild arthritis. (Tr. 250). The medical evidence indicates that most of Tyler's physical examinations revealed normal lower extremity findings. (Tr. 244, 246, 254, 393). In October 2011, Tyler complained of knee pain and had decreased range of motion, but she could still walk around. (Tr. 464-66). In January 2012, Tyler was able to flex and extend her legs to 90 degrees, fully extend her legs, and straight leg raise bilaterally. (Tr. 423). Significantly, the medical evidence contains no notation that Tyler needed to elevate her legs above waist level, use a cane, or undergo knee replacement surgery, as Tyler asserted at the hearing.[6]

In light of this objective medical evidence, the ALJ's RFC finding adequately accommodated Tyler's physical impairments, including her epilepsy, degenerative joint disease, and carpal tunnel syndrome. (Tr. 16). The ALJ concluded that Tyler could not climb ladders; could only occasionally climb stairs, crouch, and stoop; could not crawl; could perform no more than frequent handling, fingering, feeling, and reaching (with no reaching above shoulder level required); could not be exposed to hazards or vibration; and could not be required to drive as a work duty. (Tr. 16-18). Tyler has offered no evidence justifying greater limitations than those the ALJ identified resulting from these physical conditions.

With respect to Tyler's mental impairments, she asserts in her motion only that the record "revealed diagnoses of 'major dep. – recurrent …' as well as a [Global Assessment of

---

[6] Tyler also complained of bilateral carpal tunnel syndrome, shoulder pain, and back pain, but clinical examinations and diagnostic studies showed only mild-to-moderate impairments. For example, although Tyler testified at the hearing that she had been wearing prescribed wrist braces for two years (Tr. 31), there is no indication of such braces in the medical record. Moreover, records show that Tyler was treated for left shoulder tendinitis, but treatment notes reflect that this had resolved by early 2011. (Tr. 370). And, with respect to Tyler's back pain, lumbar spine x-rays were negative. (Tr. 404).

Functioning ("GAF") score][7] of 42." (Doc. #10 at 11). The ALJ did not ignore Tyler's depression, however. Rather, the ALJ noted in her decision that in June 2010, Tyler presented to the emergency room after overdosing on an unknown amount of Prozac after she became angry with a family member. (Tr. 17, 252-54). Clinically, however, Tyler was in no acute distress, felt fine, and was discharged less than three hours later. (Tr. 252-54). The ALJ also noted that, for a few months in 2011, Tyler received outpatient treatment at Insight Recovery Center for depression, panic attacks, and visual hallucinations of a deceased niece. (Tr. 18, 349-62, 477-96). In April 2011, Tyler's mental status examination showed that she was alert and oriented and had no abnormal motor behavior, logical and goal-directed thought processes, no suicidal or homicidal ideations, and intact memory. (Tr. 359-60, 489-90). She received a GAF score of 55. (Tr. 360, 490). By May 2011, she reported feeling like she was gradually getting better. (Tr. 482). And, as the ALJ noted, in January 2012, she was seen at Consumer Services, at which time she denied hallucinations, was described as well-groomed and articulate, and was assigned a GAF score of 60. (Tr. 18, 415-18). The ALJ specifically accommodated Tyler's depression by limiting her to simple, routine, low stress work (defined as no fast-paced work, quotas, or assembly line work). (Tr. 16-18). Tyler has not identified any additional mental limitations that she believes would have been appropriate, and there is no indication in the record that additional restrictions are warranted.[8]

---

[7] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

[8] In addition, the ALJ considered and gave "significant weight" to the opinion of the state agency psychiatrist, Dr. Beshara, that Tyler's mental impairments cause only mild limitations in performing daily activities and maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace, and that she is capable of performing unskilled work. (Tr. 18 (citing Tr. 65-66)). Tyler does not challenge these conclusions, and they are supported by substantial evidence.

In addition, the ALJ noted that Tyler's allegations of disabling limitations were not consistent with her reported social functioning and daily activities. (*Id.*). For example, the ALJ noted that Tyler reported cooking complete meals, performing household chores, driving, shopping, socializing with others on a daily basis, and handling her finances. (Tr. 18, 180-82). In addition, the ALJ referenced Tyler's testimony that, during the relevant period, she was able to care for four young children six to eight hours per day. (Tr. 18, 42). It was appropriate for the ALJ to consider these facts in assessing Tyler's credibility. *See* 20 C.F.R. §404.1529(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).

In the face of this substantial evidence, Tyler relies primarily on own her testimony and her subjective complaints to physicians. (Doc. #9 at 10-11). However, even where there is "objective medical evidence of an underlying medical condition …an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). While Tyler might disagree with the ALJ's credibility assessment, she has not articulated a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Tyler's credibility, and that explanation is supported by substantial evidence, her credibility finding should not be disturbed.

    3.  *Adequacy of the Hypothetical*

Tyler also asserts in her brief that "for a response to a hypothetical question to constitute

13

substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #9 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, however, Tyler simply states in conclusory fashion that "[b]ecause each element of the [ALJ's] hypothetical does not accurately describe [her] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*). Although Tyler phrases this as a Step Five finding, the Court concludes that Tyler is attempting to refute the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

In her decision, the ALJ thoroughly reviewed and discussed the record evidence, concluding that Tyler has the RFC to perform light work, with the following additional limitations: no climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; frequent handling, fingering, feeling, and reaching, with no reaching above shoulder level required; no exposure to hazards or vibration; no driving as a work duty; and simple, routine, low stress work (defined as no fast-paced work, no work that involves quotas, and no assembly line work). (Tr. 16-18). In reaching this conclusion, the ALJ considered the objective medical evidence, the opinion of the state agency reviewing psychiatrist, and Tyler's daily activities, as detailed above.

Tyler appears to argue that the ALJ erred in failing to include in her hypothetical that she purportedly needs to elevate her legs above waist level, would be absent from work more than two days a month, and would be off task more than twenty percent of the time, each of which she asserts would be work preclusive. (Doc. #9 at 11-12). However, Tyler does not point to any

14

evidence in the record even suggesting – let alone establishing – that she is limited in these respects. No physician of record ever indicated that Tyler has such functional limitations. And, although Tyler testified that she stays in bed all day, three or four days a week (Tr. 34), the ALJ discounted her allegations as less than fully credible because of record evidence showing that she has been able to perform household chores, manage her finances, drive, shop, attend doctors' appointments, and even babysit four young children for a significant period of time. (Tr. 16-18). For these reasons, the ALJ was not required to include the limitations proposed by Tyler in the hypothetical question she posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, 2013 WL 6631463, at *9 (E.D. Mich. Dec. 17, 2013) (same). As such, Tyler's argument that the ALJ formed an inaccurate hypothetical lacks merit.

### III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Tyler's Motion for Summary Judgment **[9]** be **DENIED**, the Commissioner's Motion **[13]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: June 23, 2014                                       s/David R. Grand
Ann Arbor, Michigan                                     DAVID R. GRAND
                                                                        United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2014.

                                               s/Eddrey O. Butts
                                               EDDREY O. BUTTS
                                               Case Manager